UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REPUBLIC AIRWAYS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00986-SEB-TAB |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS LOCAL 357, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PENDING MOTIONS

This matter is before the Court on Plaintiff Republic Airways Inc.'s ("Republic" or the "Company") Motion for Summary Judgment, dkt. 22, and Defendants International Brotherhood of Teamsters ("IBT") and International Brotherhood of Teamsters Local 357's ("Local 357") (collectively, the "Union") Motion to Dismiss for Lack of Jurisdiction, dkt. 34. For the reasons explained below, Republic's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and the Union's Motion to Dismiss is **DENIED**.

## BACKGROUND

This action emanated from Republic's denial of a Union grievance and the parties' (uncompromising) positions as to whether their collective bargaining agreement permits the Union to take that denial to arbitration.[1]

---

[1] This is the third (separate but related) lawsuit filed between the parties in our court. *Int'l Bhd. of Teamsters v. Republic Airways, Inc.*, No. 1:23-cv-00995-RLY-MG, 2024 WL 1521488 (S.D. Ind.

## I.    The Parties' Collective Bargaining Agreement

Republic, a regional airline, and the Union are parties to a 2022 Collective Bargaining Agreement (the "CBA" or the "Agreement"), which sets forth the terms and conditions of employment for Republic's pilots. Dkt. 22-1 at 6. The CBA outlines an internal grievance procedure, as detailed below:

### A.    Grievances under Article 18

Under Article 18, a pilot or the Union may initiate the dispute resolution procedure by "fil[ing] a grievance concerning any interpretation or application of the terms of th[e] Agreement by the Company, including that a [p]ilot has been unjustly disciplined or discharged . . . ." *Id.* at 238. Discipline- and discharge-related grievances require the parties to convene for an investigative hearing, after which Republic renders a written decision. Thereafter, the pilot or the Union may "grieve the decision" by submitting such grievance to the Vice President of Labor Relations. *Id.* at 239. Non-disciplinary grievances "concerning any action of the Company affecting" a pilot or a group of pilots, by contrast, must be submitted in the first instance to the Vice President of Labor Relations. *Id.* at 240. Unless the parties agree otherwise, all disputes must also "be submitted to the Grievance Settlement Conference" (the "Conference") convened by Republic and Union representatives. *Id.* at 241. The Conference is designed to "be informal" and is conducted "without the assistance of a designated mediator." *Id.*

---

Mar. 6, 2024), *aff'd*, 127 F.4th 688 (7th Cir. 2025); *Int'l Bhd. of Teamsters Loc. 357 v. Republic Airways, Inc.*, No. 1:24-cv-00580-SEB-MJD, dkt. 43 (S.D. Ind. Nov. 13, 2024).

If Republic denies a grievance, the Union may take an appeal to the System Board of Adjustments (the "Board"), an arbitral body established pursuant to Section 204, Title II of the Railway Labor Act, 45 U.S.C. § 151, *et seq.* (the "Railway Labor Act"). *See* dkt. 22-1 at 240–41. The Board is comprised of three members: one selected by the Union, one selected by Republic, and one selected by mutual agreement of the parties. *Id.* at 242. As for the final member, if a "party fails to select an arbitrator . . . or the parties are otherwise unable to agree on the selection of an arbitrator, either party may request the National Mediation Board to provide . . . a panel of seven neutrals" from which "[t]he parties shall, by the alternate strike method, select an arbitrator." *Id.*

The Board may exercise jurisdiction "over disputes concerning any employee covered by th[e] Agreement and the Company growing out of grievances or out of interpretation of the terms of th[e] Agreement." *Id.* The Board must "consider any dispute properly submitted to it by the Union . . . ." *Id.* The Board's jurisdiction does "not extend to changes in hours of employment, rates of compensation, or working conditions covered by existing agreements between the parties . . . ." *Id.*

The CBA specifically excludes so-called "probationary pilots," who are in their first twelve months of active service, *id.* at 31, from the arbitral procedures and remedies available under Article 18. More specifically, Article 18.C states that probationary pilots "may be disciplined or discharged for any reason without recourse to this Article 18." *Id.* at 238. The CBA further states that "[n]othing in this Agreement shall be construed to extend the right to arbitrate a grievance concerning [the] discipline or discharge to a probationary

[p]ilot, or to require that such discipline or discharge be based on just cause," though probationary pilots nonetheless "have the right to submit grievances." *Id.* at 245.

### B.    Expedited Arbitration under Article 1

Article 1 of the CBA broadly delineates the "scope" of the CBA. Article 1.C, pertinent here, provides that "there shall be no discrimination by either party against any [p]ilot who is now, or may become, subject to the terms of this Agreement because of age, sex, race, sexual orientation, gender, color, religion, national origin, handicap, or disability." *Id.* at 7. Under Article 1.I, Union grievances alleging any violation of Article 1 are subject to arbitration "on an expedited basis directly before [the Board] sitting with a neutral arbitrator." *Id.* at 14. Within three days of such grievance's filing, the parties agree to "select an arbitrator by an alternate strike method [from] a pre-determined list of arbitrators selected by the [p]arties." *Id.*

## II.    The Current Controversy

### A.    The Initial Grievance

Effective February 8, 2024, Republic discharged First Officer Elijah Burgess ("Mr. Burgess"), a probationary pilot, based on his alleged "failure to follow a directive, insubordination, and dishonesty during an investigation." Dkt. 22-12 at 48. Shortly thereafter, on February 15, 2024, Local 357 submitted a grievance on Mr. Burgess's behalf (hereinafter, the "Grievance"), averring that Mr. Burgess had been "wrongfully terminated following an investigation into an alleged uniform violation (male pilot wearing earrings)," in contravention of Article 18's protections against "be[ing] disciplined or discharged without just cause," dkt. 22-1 at 238, as well as "all other applicable articles." Dkt. 22-2 at 2. Local 357

also asserted, "[a]s to the earring issue" specifically, that Republic maintains "separate policies for male [p]ilots and [male] flight attendants[,] which, at the very least, creates confusion regarding the Company's earring policy." *Id.*

In a February 20, 2024, email correspondence[2] to Republic, the Union (through counsel) stated, among other things, that it was "amending the grievance on its face to demand arbitration pursuant to Article 1.I" based on its view that Republic's earring policies, which differentiate between male and female pilots, were discriminatory and violated Article 1.C. Dkt. 22-3 at 2.[3] The next day, on February 21, 2024, the parties convened for their monthly Conference to discuss the Grievance. In recognition of the fact that Mr. Burgess was, at the time of his termination, a probationary pilot (thus limiting his rights and remedies under Article 18), the Union reiterated that it "would be grieving the discrimination under Article I and that the grievance would be pursued by the Union" itself. Summers Aff. ¶ 14, dkt. 45-1.

On March 7, 2024, Republic denied the Grievance, reasoning, in part, that Mr. Burgess's status as a probationary pilot precluded him from challenging the basis of his termination. *See generally* dkt. 22-4 at 3. Although Republic also "recognize[d]" that the Union

---

[2] The Union contends that Republic failed to authenticate the records of the email correspondence submitted in support of its summary judgment motion because the Declarations of Elizabeth Murphy, dkt. 22-18, and Robert Siegel, dkt. 22-19, do not verify that those records are "true and accurate copies of what they purport to be." Dkt. 45 at 10. Federal Rule of Civil Procedure 56(c)(4) provides that declarations "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify." Fed. R. Civ. P. 56(c)(4). The Declarations of Elizabeth Murphy, dkt. 22-18, and Robert Siegel, dkt. 22-19, satisfy these requirements.

[3] We note—but do not resolve the merits of—Republic's averment "that the Union never actually or properly amended its Grievance in order to rely on Article 1." Dkt. 23 at 12 n.1.

had asserted its intent to amend the Grievance to bring a claim under Article 1.I, Republic "disagree[d]" that the Union "ha[d] any right to do so." *Id.* According to Republic, the CBA was unambiguous that "[n]othing" therein "shall be construed to extend" a probationary pilot's "right to arbitrate a grievance," meaning, therefore, that the Union's efforts to proceed under Article 1.I were nonstarters. *Id.*

## B.    The Union's (Purported) Appeal

On April 4, 2024, the Union took an appeal to the Board, naming the grievant as "Local 357/Elijah Burgess." Dkt. 22-5 at 2. On that same day, Local 357's Chief Steward, Ryan Summers ("Mr. Summers"), wrote to Republic's Associate General Counsel and Director of Labor Relations, Elizabeth Murphy ("Ms. Murphy") to notify her that the Grievance "will be docketed for arbitration" pursuant to Article 1.I and requesting her "availability to meet within the next three business days to participate in the alternate strike process for the selection of an arbitrator." *Id.*

On April 10, 2024, there being no forthcoming response from Republic, Mr. Summers contacted Sylvia P. Skratek ("Arbitrator Skratek") inquiring as to her availability to conduct an expedited arbitration. Dkt. 22-6 at 3. Arbitrator Skratek responded early the next morning on April 11, 2024, after which Mr. Summers copied Republic's representatives in his reply, attaching thereto an "Arbitrator notification letter" that stated, in relevant part, as follows:

> This grievance asserts that Republic Airways violated Article 1.C.2 of the Agreement in its termination of the affected pilot. The grievance is therefore subject to expedited arbitration under Article 1.I of the Agreement. In accordance with that provision, the Company was notified of its obligation to participate in the selection of an arbitrator under the timeline established by

Article 1.I. They failed to participate as required. Accordingly, the Union has selected you to hear the referenced grievance. Your availability is being forwarded to the Company for scheduling.

*Id.* at 2, 4.

On April 15, 2024, Republic emailed Arbitrator Skratek (copying the Union) "in response to correspondence from" the Union "purporting to unilaterally select" an arbitrator, stating that neither the CBA nor the Railway Labor Act "grants either party the right" to do so. Dkt. 22-7 at 2. Republic asserted that "the CBA only permits arbitrator selection by mutual agreement of the parties," and, as such, the Union's "selection" of Arbitrator Skratek was invalid and did not confer on her any jurisdiction. *Id.* Republic also reiterated its position that Mr. Burgess's status as a probationary pilot precluded recourse to arbitration. *Id.*

The Union replied to Arbitrator Skratek on April 16, 2024, asserting that the parties' dispute arose under Article 1.C's nondiscrimination provision. Dkt. 22-8 at 4. According to the Union, Republic "chose to ignore" the April 4th letter notifying it that the Union was proceeding to expedited arbitration and "chose not to object to the Union's selection of arbitrator." *Id.* The Union further asserted:

> There was also no unilateral selection of an arbitrator because the Company chose not to participate in the process under Article 1.I. When the Union made its choice, the Company was silent. For these reasons, the arbitration is properly before the System Board as it arises out of Article 1 and not out of Article 18 as it is not an arbitration of discipline, but rather the Company's discriminatory policies which violate Article 1. The Company's assertions concerning the System Board's jurisdiction and the selection of the arbitrator are based on interpretations of the parties' CBA and therefore must be submitted to the [Board] for resolution along with the [U]nion's grievance.

*Id.*

The next day, Republic emailed Arbitrator Skratek the following message:

> Republic Airways has not selected you as arbitrator and is not participating in the arbitration requested by [the Union]. You therefore have no authority to resolve any dispute between the parties or exercise jurisdiction over Republic in any manner. Contrary to the [U]nion's assertion, Republic has not acquiesced in the [U]nion's designation of you as arbitrator. Republic has expressly informed the [U]nion it is not going to select an arbitrator. To the extent the [U]nion disagrees with Republic's refusal to arbitrate regarding discharge of a probationary pilot, the [U]nion is entitled to seek a court order compelling arbitration (which Republic will vigorously oppose), but the [U]nion is not entitled unilaterally to select an arbitrator.

Dkt. 22-9 at 2.

### C.    Arbitrator Skratek's April 25th Decision

On April 25, 2024, Arbitrator Skratek issued a written decision rejecting Republic's "unilateral selection" objection and explaining that there had been "no unilateral selection of an arbitrator" where Republic itself had "chose[n] not to participate in the selection process." Dkt. 22-11 at 3 (hereinafter referred to as the "April 25th Decision"). In Arbitrator Skratek's view, "[t]here is nothing within [Article 1] that even remotely suggests that the Company can simply say[,] 'No, that's not arbitrable.' " *Id.* Therefore, she concluded, Republic had acted "at its own peril" when "it chose not to participate in the process" after the Union had disclosed its intent to pursue the matter in arbitration. *Id.* at 4.

Arbitrator Skratek further concluded that, although the CBA does not provide probationary pilots a right to arbitrate disciplinary- or discharge-related grievances, Article 1.C's nondiscrimination clause applies to all employees—probationary and non-probationary alike. The CBA, she explained, contains "an implied term," according to which every Republic employee has a "right not to be dismissed in bad faith." *Id.* at 3. Thus, where the

dispute "arises from the denial of a substantive or assertible right under the Agreement or there is an allegation of discrimination or unlawful conduct then it may be challenged through the grievance procedure up to and including arbitration." *Id.*

On June 8, 2024, the Union moved for entry of judgment and relief, asserting that, "[b]ecause the Company ha[d] refused to appear in this arbitration and defend its position, the only remaining action required [wa]s to enter judgment" in favor of the Union. Dkt. 22-12 at 2 –17. The Union also argued that whether "the question of arbitrability is subject to judicial review has been rejected." *Id.* at 12 (quoting *Int'l Bhd. of Teamsters v. Chautauqua Airlines*, 186 F. Supp. 2d 901, 909 (S.D. Ind. 2001) ("After reviewing the agreements, the Court concludes that determining which party's position is correct inevitably requires an interpretation of Article 11 and Article 18, something that this Court cannot do.")).

### D.    This Lawsuit & Subsequent Developments[4]

On June 10, 2024, Republic filed the instant complaint reasserting its position that Arbitrator Skratek lacked jurisdiction to accept her "unilateral appointment" and to decide an issue of substantive arbitrability. *See* dkt. 1. In this action, Republic seeks an injunction prohibiting the Union from proceeding any further in arbitration and requests that the Court vacate the April 25th Decision or, alternatively, issue a declaratory judgment stating that Arbitrator Skratek exceeded her jurisdiction. *Id.* at 1.

---

[4] Since moving for summary judgment, Republic has twice requested (and was granted) leave to file supplemental evidence, pursuant to Federal Rule of Civil Procedure 56(e)(4). Dkt. 50, 51, 53, 55. We recite those supplemental facts only insofar as they are relevant to resolving the instant motions.

On June 11, 2024, Republic's counsel emailed Arbitrator Skratek asking that she postpone any decision on the Union's June 8th motion for entry of judgment pending resolution of this litigation. Dkt. 22-14 at 3; dkt. 22-15 at 2. The Union timely objected, arguing that Republic's request to suspend proceedings while awaiting "another forum's review that does not sit in an appellate capacity [wa]s legally untenable" and "frustrate[d] the central tenets" of the Railway Labor Act by thwarting the prompt resolution of labor disputes. Dkt. 22-14 at 2.

On June 17, 2024, Arbitrator Skratek issued a written "Response to the Parties' Submissions" indicating that she would "refrain from moving forward with the proceedings for thirty (30) calendar days," after which she would address the pending grievance in an expedited fashion, unless a court order provided otherwise. Dkt. 22-16 at 3. As a threshold matter, Arbitrator Skratek stated, "Unless prohibited by language within a collective bargaining agreement[,] an arbitrator may make a determination on arbitrability when one of the parties has requested it." *Id.* at 2. In her view, the CBA's limitation on remedies available to probationary pilots did not apply to "an inquiry into allegations of arbitrary, discriminatory or bad faith conduct by the Company." *Id.* Because the substantive dispute related to Republic's "alleged discriminatory treatment based on sex," in violation of Article 1.C, Arbitrator Skratek found that arbitration was proper. *Id.* "To wait for an indeterminate amount of time for a Court determination," she reasoned, "frustrates the very intent of the expedited [arbitration] procedure." *Id.* at 3.

On October 30, 2024, Arbitrator Skratek issued a final disposition of the Grievance, concluding that, on the merits, Republic's "differentiation between male and female pilots

and male flight attendants is discriminatory based on sex in violation of Article 1 of the CBA." Dkt. 50-21 at 15 (hereinafter, the "Merits Decision"). Addressing Republic's jurisdictional objections, she found that Republic's resistance to and nonparticipation in the arbitral proceedings were unjustified and risked creating "a roadmap for further non-compliance." *See id.* The remedy included, *inter alia*, an order that Republic eliminate from its policies any provisions differentiating between pilots based on sex or gender as well as an award to the Union for "any costs and fees, including attorney's fees" expended with regard to litigation in this Court. *Id.* at 17.

On January 22, 2025, Arbitrator Skratek granted the Union's December 26, 2024, "Motion to Enforce" the arbitration award, ordering Republic to "compensate the Union $10,000 per day for each day, retroactive to November 30, 2024, and for each day thereafter that the [policies are] not amended to eliminate discriminatory policies." Dkt. 53-3 (hereinafter, the "Enforcement Order").

## III.   Procedural History

As noted above, Republic initiated this litigation on June 11, 2024, averring that Arbitrator Skratek exceeded her arbitral jurisdiction and seeking a court order either vacating the April 25th Decision, pursuant to § 153 First (q) of the Railway Labor Act, or entering declaratory judgment to the same effect. Dkt. 1 at 10–19. On July 15, 2024, Republic moved for summary judgment. Dkt. 22. On August 10, 2024, the Union moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. 34. Thereafter, on August 20, 2024, the Magistrate Judge stayed further discovery pending resolution of the parties' motions. Dkt. 43. Republic's Motion for

Summary Judgment, dkt. 22, and the Union's Motion to Dismiss, dkt. 34, are fully briefed and ripe for ruling.

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment standard requires "no *genuine* issue of *material* fact," meaning that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### II.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss an action where it lacks subject matter jurisdiction. In determining whether subject matter jurisdiction exists, a district court may properly "look beyond the jurisdictional allegations in the complaint" and "view whatever evidence has been submitted." *Roman v. U.S. Postal Servs.*, 821 F.2d 382, 385 (7th Cir. 1987); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) ("In reviewing a factual challenge" to subject matter jurisdiction, "the court may look beyond the pleadings and view any evidence submitted . . . .").

12

# DISCUSSION

Because subject matter jurisdiction necessarily precedes any consideration of the merits, we begin our analysis with the Union's motion to dismiss. *Flynn v. FCA US LLC*, 39 F.4th 946, 951 (7th Cir. 2022).

## I.    Subject Matter Jurisdiction

The Union asserts two theories supporting dismissal for lack of subject matter jurisdiction: first, that the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, displaces the judicial forum in favor of arbitration; and, second, that Republic lacks standing under Article III of the United States Constitution. We address each *seriatim*. *See Norfolk Southern Ry. Co. v. Guthrie*, 233 F.3d 532, 534 (7th Cir. 2000).[5]

### A.    The Railway Labor Act

The Union asserts that that Railway Labor Act divests this Court of jurisdiction to resolve Republic's claims. The Railway Labor Act "provid[es] a comprehensive framework for resolving labor disputes" through arbitration that distinguishes so-called "minor" disputes regarding the interpretation or application of collective bargaining agreements from so-called "major" disputes relating to the formation of or efforts to secure collective bargaining agreements. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). While district courts have (limited) subject matter jurisdiction over major disputes, the Railway

---

[5] In briefing the motion to dismiss, the parties reassert many of the same arguments presented in their summary judgment materials. *Compare* Defs.' Mem. in Supp. of Mot. to Dismiss 2–5, dkt. 35 (discussing minor disputes and legal standard for analyzing arbitration decisions under the Railway Labor Act), *with* Defs.' Resp. to Pl.'s Mot. Summ. J. 11–12, 23–24, dkt. 45 (same). Insofar as the parties' jurisdictional arguments relate to the *merits* of Republic's claims, rather than our subject matter jurisdiction, we do not address them here. *See* Pl.'s Reply Br. 2, dkt. 49.

Labor Act assigns resolution of minor disputes to the exclusive authority of the System Boards of Adjustment, effectively "divest[ing] the state and federal courts of subject matter jurisdiction." *Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 828 (7th Cir. 1987) (citing *Jackson v. Consol. Rail Corp.*, 717 F.2d 1045, 1057 (7th Cir. 1983), *cert. denied,* 465 U.S. 1007 (1984)).

According to the Union, Republic's claims that Arbitrator Skratek exceeded her jurisdiction by accepting her appointment and by deciding a question of arbitrability constitute "minor" disputes because they implicate interpretation and application of the CBA. As minor disputes, the Union continues, we have no jurisdiction to resolve them.

The Union's argument is unpersuasive and unavailing. Republic's complaint specifically invokes § 153 First (q) of the Railway Labor Act, which provides, in pertinent part, that "any carrier . . . aggrieved by any of the terms of an [arbitral] award . . . may file in any United States district court . . . a petition for review of the division's order." 45 U.S.C. § 153 First (q). "The court *shall have jurisdiction* to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings . . . for failure of the order to conform, or to confine itself, to matters within the scope of the division's jurisdiction." *Id.* (emphasis added). In other words, the Railway Labor Act permits federal district courts to review the propriety of an arbitral award where, as Republic alleges here, the "arbitrator exceeded h[er] jurisdiction." *Bhd. of Locomotive Eng'rs & Trainmen, Gen. Comm. of Adjustment, Cent. Conf. v. Union Pac. R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013). That the underlying dispute might itself qualify as "minor" does not, as a matter of law, deprive federal courts of the authority to resolve challenges asserted under § 153 First (q). *See id.*

14

(affirming entry of summary judgment against union seeking to vacate arbitral award concerning minor dispute).

In summary, the Railway Labor Act authorizes district courts "to affirm," "to set aside" or "to remand" challenged arbitral awards, irrespective of the nature of the underlying dispute. 45 U.S.C. § 153 First (q). Republic's request that we vacate Arbitrator Skratek's Jurisdiction Decision, pursuant to 45 U.S.C. § 153 First (q), is therefore well within our authority to decide.

### B.    Article III Ripeness

The Union argues that Republic's petition to vacate is unripe because, at the time that Republic filed suit, Arbitrator Skratek had not yet entered a final order.[6] It is well established that "[a] ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by [the] arbitrator[ ]." *Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000). Indeed, the Magistrate Judge previously concluded, and we agree, that Arbitrator Skratek's April 25th Decision was her "final judgment on two jurisdictional issues, and, on those issues, nothing more remain[ed] for [her] consideration." Dkt. 43 at 4. Thus, the fact that matters remained pending before Arbitrator Skratek at the time Republic initiated this action does not

---

[6] Republic argues that the October 30, 2024, Merits Decision moots the Union's ripeness argument. Dkt. 50 at 2–3. Because jurisdiction is determined by "the events at the time the case is brought," we address the Union's argument accordingly. *Drs. Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010) (internal quotation marks and citation omitted).

undermine the finality of the April 25th Decision nor does it render Republic's unripe. As such, the matter before us is ripe for judicial review.[7]

## II.    Republic's Petition to Vacate

Section 153 First (q) of the Railway Labor Act authorizes federal courts to vacate, "in whole or in part," or to remand an arbitration order "for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction." 45 U.S.C. § 153 First (q). In conducting such a review, "[c]ourts are not authorized to review [an] arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (reviewing labor-arbitration decision under the Labor Management Relations Act, 29 U.S.C. § 185(a)); *see also United Food & Com. Workers, Loc. 1546 v. Illinois Am. Water Co.*, 569 F.3d 750, 754 n.3 (7th Cir. 2009) (noting that courts "apply the same limited review to arbitral decisions rendered pursuant to" the Labor Management Relations Act, the Railway Labor Act, and the Federal Arbitration Act) (citations omitted). Rather, "we apply one of the most deferential standards of judicial review in all of federal law." *Bhd. of Locomotive Eng'rs*, 719 F.3d at 803. "Judicial review of Board orders is limited to three specific grounds: (1) failure of the Board to comply with the requirements of the Railway Labor Act; (2) failure of the Board to confine itself to matters within the scope of

---

[7] Because we are satisfied that this Court has subject matter jurisdiction over this dispute, we do not reach Republic's alternative jurisdictional argument based on the Declaratory Judgment Act. Dkt. 40 at 12–14.

its jurisdiction; and (3) fraud or corruption." *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 513 (7th Cir. 1993) (internal quotation and citations omitted).

Here, Republic claims that Arbitrator Skratek exceeded her jurisdiction in two ways: first, by "approv[ing] her unilateral appointment" without regard to the terms of Article 18 or, "to the extent it was ever properly raised," Article 1; and, second, by resolving a disputed question of substantive arbitrability otherwise reserved (exclusively) for judicial determination.[8] Dkt. 23 at 11. We address each issue in turn.

### A.    Arbitrator Selection

"To remain within the scope of [her] jurisdiction, the essence of [an arbitrator's] decision must be contained in the terms of the agreement between the union and the employer." *Lyons v. Norfolk & W. Ry. Co.*, 163 F.3d 466, 469 (7th Cir. 1999); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (arbitral "award is legitimate only so long as it draws its essence from the collective bargaining agreement"). "Arbitrators exceed their jurisdiction if they fail to interpret the collective bargaining agreements between the parties." *Bhd. of Locomotive Eng'rs*, 719 F.3d at 803. The dispositive inquiry "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly

---

[8] The Union asserts that Republic's refusal to participate in arbitration and/or failure to raise its objections before Arbitrator Skratek constitute procedural forfeiture. Dkt. 45 at 21–23. We think the fact of Republic's having brought this lawsuit as well as the record evidence documenting the numerous occasions on which Republic raised its objections with Arbitrator Skratek, *e.g.*, dkt. 22-7, 22-9, 22-13, demonstrate that the Union's procedural forfeiture argument lacks merit. *Cf. AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter.").

erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987). "We resolve any reasonable doubt about whether an award draws its essence from the [CBA] in favor of enforcing the award." *Am. Postal Workers Union, AFL-CIO, Milwaukee Loc. v. Runyon*, 185 F.3d 832, 835 (7th Cir.1999).

"Arbitrators fail to interpret an agreement when they ignore the text of the agreement and instead rely on their own notions of justice." *Bhd. of Locomotive Eng'rs*, 719 F.3d at 803–04 (citing *United Steelworkers*, 363 U.S. at 597 ("[A]n arbitrator . . . does not sit to dispense his own brand of industrial justice.")). While arbitrators may, of course, weigh "the interests at stake" as well as "relevant policy goals," they must not stray from their responsibility to "interpret[ ] the parties' collective bargaining agreement and reach[ ] a tenable result from the text of the agreement." *Id.* at 804. "When an arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (citation omitted). "Because the arbitrator is typically limited to interpreting the contract, if 'there is no possible interpretive route to the award,' then a 'noncontractual basis can be inferred and the award set aside.' " *Id.* (quoting *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991)).

Here, Republic argues that the April 25th Decision must be vacated because Arbitrator Skratek "failed to address, consider, or interpret the mutual selection of arbitrator provisions" set forth in Article 1 (as well as Article 18), which, Republic maintains,

18

"expressly require the participation of both parties and do not provide for or enable the unilateral selection of the arbitrator by only one party." Dkt. 23 at 11–12. In other words, because Arbitrator Skratek's selection was not the achieved through the parties' participation in the "alternate strike method," there was no contractual basis on which Arbitrator Skratek could affirm her appointment to resolve any dispute presented to her.

Arbitrator Skratek reasoned that her appointment comported with Article 1's "mandate[ ] that the Parties 'will select an arbitrator.' " Dkt. 22-11 at 3. Continuing, she wrote, "The Company was put on notice by the Union that it intended to take the matter to arbitration under this provision. When it chose not to participate in the process under Article 1[,] it did so at its own peril." *Id.* at 4.

After careful review, we conclude that Arbitrator Skratek "exceeded the powers delegated to h[er] by the parties," *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 768 (7th Cir. 2005) (internal citation omitted), when she disregarded the explicit terms of the CBA stipulating to the selection of an arbitrator "by an alternate strike method of a pre-determined list of arbitrators selected by the Parties . . . ." Dkt. 22-1 at 9. Neither Article 1 nor Article 18 contains language endorsing the notion that declining to proceed to arbitration—where, as here, the question of arbitrability is itself contested—will result in a party's forfeiture of its contractual right to the mutual selection of an arbitrator. Unfortunately, Arbitrator Skratek's April 25th Decision failed to confront the express, contractual limitation to her authority, and, as such, its "essence" cannot be said to originate from the terms of the CBA. *See Int'l Union of Operating Engineers, Local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 745 (7th Cir.

2004) (The "decision to ignore or supersede language conceded to be binding allows a court to vacate the award.").

The Union argues that, because the CBA does not explicitly contemplate the present situation involving one party's outright refusal to participate in arbitration, Arbitrator Skratek was entitled and expected to bring her "informed judgment to bear in order to reach a fair solution of a problem," particularly in the realm of "formulating remedies." *United Steelworkers of Am.*, 363 U.S. at 597. Specifically, the Union maintains, Arbitrator Skratek "solved the problem" of Republic's refusal to arbitrate by "enforcing the carrier's obligation to arbitrate the grievance before her." Dkt. 45 at 27. The power to formulate a remedy, however, presupposes that the arbitrator was appointed in accordance with the methods specified by the CBA. Remedial flexibility, in any event, does not authorize arbitrators to "stray from interpretation and application" of a CBA "and effectively [to] dispense with their own brand of industrial justice." *Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters*, 280 F.3d 1133, 1142 (7th Cir. 2002) (cleaned up). Arbitrator Skratek's purported remedy (i.e., affirming her unilateral appointment) did not simply "fill gaps left in" the CBA (i.e., the *only* source of her authority), where the relevant provisions of the CBA unambiguously stipulate to the mutual selection of an arbitrator. *N. Indiana Pub. Serv. Co. v. United Steelworkers of Am. AFL-CIO-CLC*, 243 F.3d 345, 348 (7th Cir. 2001). Because such "novel and innovative" solution "cannot be reconciled with th[e] explicit and unambiguous language" of the CBA, the April 25th Decision "exceed[ed] the realm of interpretation and application." *Wilson v. Chicago & North Western Transp. Co.*, 728 F.2d 963, 966–67 (7th Cir. 1984).

20

We understand the Union's (and Arbitrator Skratek's) frustration with Republic's refusal to engage in arbitration, but we cannot agree that forging ahead without regard for fundamental, threshold jurisdictional and arbitrability disputes comports with the contractual nature of arbitration. The ordinary recourse in such circumstances is to allow the party seeking arbitration to seek judicial intervention by obtaining a court order compelling the recalcitrant party to arbitration. *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 646 (1986) (union seeking to compel arbitration after employer refused to submit to arbitration); *Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 555 (7th Cir. 2002) (union seeking to compel arbitration under the Railway Labor Act after airline employer denied grievance and objected to arbitrability). *See also Exelon Generation Co., LLC v. Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 140 F. Supp. 3d 751 (N.D. Ill. 2015) (arbitration stayed while party objecting to arbitration sought declaratory judgment in court).

We can find no legal authority, binding or otherwise, supporting the Union's insistence that an arbitrator operates within the boundaries of her jurisdiction when her selection did not abide by the method agreed upon by the parties in their collective bargaining agreement. *See, e.g.*, *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir. 1977) (Arbitral award "will not be enforced if the arbitrator was not chosen in conformance with the agreement of the parties to arbitrate."); *Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Loc. 272*, 791 F.2d 22, 25 (2d Cir. 1986) ("[T]he arbitrator had no authority to interpret th[e] agreement, because his appointment did not conform to it."); *Food Handlers Loc. 425 v. Pluss Poultry, Inc.,* 260 F.2d 835, 837 (8th Cir. 1958) (finding no authority to support ex parte award

where non-arbitrating party neither consented to arbitrate nor participated in arbitrator selection); *Loc. 227, Int'l Hod Carriers, Bldg. & Common Laborers Union of Am., AFL-CIO v. Sullivan*, 221 F. Supp. 696 (E.D. Ill. 1963) (setting aside arbitration award where "the parties failed to arbitrate . . . in accordance with the terms of the collective bargaining agreement"). Arbitrator Skratek's April 25th Decision, therefore, must be set aside, in accordance with 45 U.S.C. § 153 First (q).

### B.    Arbitrability

Republic's second argument is that Arbitrator Skratek erred in rendering a decision on a question of substantive arbitrability. Under settled precedent, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T Techs.*, 475 U.S. at 649. Indeed, "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *Id.* (quotation and citation omitted). Parties to a collective bargaining agreement may, if they so choose, contractually "assign the determination of the arbitrability of a dispute to an arbitrator—but then the question whether they have done that is for the court." *Midwest Exp.*, 279 F.3d at 555. To hold that "a labor arbitrator ha[s] the power to determine h[er] own jurisdiction" would threaten to "drastically reduce[ ]" the "willingness of parties to enter into agreements that provide for arbitration of specified disputes." *AT&T Techs., Inc.*, 475 U.S. at 651 (cleaned up).

A straightforward application of these legal principles to the case at bar compels the conclusion that Arbitrator Skratek exceeded the scope of her jurisdiction when she resolved

a contested question of substantive arbitrability. The Union insists that the CBA "unambig-uously commits this dispute to arbitration," dkt. 45 at 15, notwithstanding controlling Su-preme Court and Seventh Circuit precedent dictating that only courts—*not* arbitrators—may undertake and resolve whether a dispute arising out of a collective bargaining agree-ment is subject to arbitration or, as the Union argues here, to determine whether "the parties clearly and unmistakably provide[d] otherwise" and delegated the question of arbitrability to an arbitrator. *AT&T Techs.*, 475 U.S. at 649; *Midwest Exp.*, 279 F.3d at 555.

In sum, "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.' " *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 208–09 (1991). Because this "issue should have been decided by the District Court," subject to review by the Court of Appeals, "it should not have been referred to the arbitrator." *AT&T Techs.*, 475 U.S. at 652. Arbitrator Skratek's resolution of the arbitrability issue must, and therefore shall, be set aside, pursuant to 45 U.S.C. § 153 First (q).

## III.    Republic's Request for a Permanent Injunction

"When a permanent injunction is requested at summary judgment, a court must con-sider whether (1) the plaintiff has succeeded on the merits; (2) remedies at law . . . are inadequate to compensate for that harm; (3) an injunction is warranted after balancing the hardship to plaintiff against potential hardship to the defendant in granting the injunction; and (4) the public interest does not argue against granting the injunction." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009), *aff'd sub nom. Midwest*

*Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) (citing *Collins v. Hamilton*, 349 F.3d 371 (7th Cir. 2003)).

Republic seeks a permanent injunction prohibiting the Union from proceeding in arbitration before obtaining "a decision from a court of competent jurisdiction determining that the grievance is arbitrable and, if arbitrable, requiring the parties to select an arbitrator in accordance with the terms of the CBA." Dkt. 23 at 23. Republic argues that, without permanent injunctive relief, "nothing prevents the Union from repeating its conduct by unilaterally selecting an arbitrator to hear the same dispute in the future." *Id.* at 25.

"[T]he district court has the discretion to issue a broad injunction in cases where a proclivity for unlawful conduct has been shown." *Russian Medi Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (internal quotation and citation omitted); *see also United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 356 (7th Cir. 2019) ("[T]he natural assumption, in the absence of an express limitation on the court's power, would be that Congress intended to authorize injunctive relief aimed at a preventing a repetition of the wrongful acts that the court has found to have already occurred.").

In our view, Republic has demonstrated neither the propriety nor the necessity of a permanent injunction in addition to the remedy specifically provided by the Railway Labor Act—that is, an order vacating the underlying arbitral decision(s) under 45 U.S.C. § 153 First (q). Beyond Republic's concern that the Union may "repeat[ ] its conduct," there is no evidence suggesting that a permanent injunction is required in order to deter future statutory or contractual violations or to effectuate the terms of this Order. We assume that the

parties will proceed in accordance with today's ruling. Republic's request for permanent injunctive relief is thus denied without prejudice.

## CONCLUSION

Based on the foregoing, Republic's Motion for Summary Judgment, dkt. 22, is **GRANTED in part** and **DENIED in part**. Republic's motion is **GRANTED** insofar as Arbitrator Skratek's April 25th Decision is **SET ASIDE**, pursuant to 45 U.S.C. § 153 First (q), "for failure of the order to conform" and "confine itself[ ] to matters within the scope of the division's jurisdiction." 45 U.S.C. § 153 First (q). Republic's motion is **DENIED** as to its request for permanent injunctive relief and as to its alternative claim under the Declaratory Judgment Act.

The Union's Motion to Dismiss, dkt. 34, is **DENIED**.

Final judgment shall issue by separate entry.

IT IS SO ORDERED.

Date:            3/31/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

David J. Carr
ICE MILLER LLP (Indianapolis)
david.carr@icemiller.com

Aparna B. Joshi
O'MELVENY & MYERS LLP
ajoshi@omm.com

Jeffrey A. Macey
Macey Swanson LLP
jmacey@maceylaw.com

Emily Katherine Pantoja
International Brotherhood of Teamsters
epantoja@teamster.org

Robert Siegel
O'MELVENY & MYERS LLP
rsiegel@omm.com

Ronald A. Stearney, Jr.
ron@stearneylaw.com

Ron Stearney
Ronald A Stearney & Assoc.
ron@stearneylaw.com

Paul Conrad Sweeney
ICE MILLER LLP (Indianapolis)
paul.sweeney@icemiller.com